United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AF HOLDINGS LLC,

Plaintiff,

vs.

DOES 1-96,

Defendants.

Case No.: C-11-03335 JSC

**ORDER RE: PLAINTIFF'S RENEWED REQUEST FOR DISCOVERY PRIOR TO RULE 26(f) CONFERENCE (Dkt. No. 24)**

This case is one of scores of "mass copyright" cases filed in this District against hundreds of doe defendants accused of using BitTorrent technology to illegally download copyrighted files from the Internet. Plaintiff renews its ex parte request for limited early discovery pursuant to Federal Rule of Civil Procedure ("FRCP") 26(d) and FRCP 45 to discover the identities of the 96 Doe Defendants named in this suit. The declaration submitted in support of the renewed motion refers to a work that is not the subject of this lawsuit (Dkt. No. 24-1); however, assuming Plaintiff can submit a proper declaration, the Court finds there is good cause for the limited discovery sought and is prepared to grant the motion.

**PLAINTIFF'S PROFFER**

The video at issue--"Sexual Obsession"--was registered with the Copyright and Trademark Office by Heartbreaker Films in March 2011 (PA-1-725-120). Plaintiff AF Holdings, LLC is a limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis. (Dkt. No. 1 at ¶6.) It represents that it has been assigned "all right, title and interest worldwide in" the video from the video's author or an assignee of the video's author. (Id. at ¶¶18-19.)

The Complaint alleges that the 96 Doe Defendants used BitTorrent, an internet peer-to-peer ("P2P") file-sharing network, to illegally reproduce and distribute the copyrighted video in violation of the Copyright Act, 17 U.S.C. § 101-1322. Individual downloaders of a BitTorrent file are known as "peers."

> The aggregate group of peers involved in downloading a particular file is called a "swarm." A server that stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a "BitTorrent client." The person who possesses a complete digital reproduction of a given file and intentionally elects to share the file with other Internet users is called the "seeder." That complete file is called a "seed."

(Dkt. No. 24-1 at ¶ 9.) In order to access a file via BitTorrent and become a "peer" and part of a "swarm" a person must have installed on their computer or other Internet access device special BitTorrent software, that is, a BitTorrent client.

The BitTorrent protocol works by having an initial seeder create a "torrent file" with instructions on how to find the seed. The seeder then uploads the file to one or more BitTorrent indexing sites. An Internet user locates the torrent file on one of the indexing sites, and then intentionally loads the file into the user's BitTorrent software which utilizes the instructions to locate the seed. "These users now are peers in the swarm with respect to that digital reproduction." (Id. at ¶ 11.) BitTorrent works by having each peer download a random portion of the file from the seed, known as a "piece" of the file. After a peer has downloaded its first piece, the peer shares its piece

with other users while it continues to download the rest of the file's pieces. The result "is that each peer is both copying and distributing copyrighted material at the same time." (Id. at ¶ 11.) The more popular a file, that is, the more peers utilizing BitTorrent to access a particular file, the faster it can be transferred to any particular user. As time passes, the size of a swarm varies, and it may endure for months, or even years, depending on the popularity of the work being downloaded and distributed. The initial seed, that is, the torrent file that created the swarm, remains the same throughout the life of the swarm.

Because the Defendants' alleged conduct occurred behind the mask of their anonymous internet protocol ("IP") addresses, Plaintiff does not know the identity of the Doe Defendants, namely the "peers" who utilized BitTorrent to access "Sexual Obsession." Accordingly, Plaintiff utilized proprietary file-sharing forensic software to obtain the unique IP addresses that were used by various peers to distribute Plaintiff's copyrighted work. The software allows Plaintiff to identify the Internet service provider ("ISP") and unique IP address for each subscriber on the date and at the time of the allegedly infringing activity. Plaintiff therefore identifies each Doe Defendant in the Complaint by the unique IP address assigned to the Internet subscriber by the subscriber's ISP.

Plaintiff now moves for early discovery and asks the Court to issue subpoenas to the relevant ISPs for the identity of the individual or entity related to each IP address. Plaintiff seeks the name, address, telephone number, and email address associated with each IP address. The subscriber may or may not be the Doe Defendant, that is, he or she (or even it) may or may not be the person who actually downloaded and distributed "Sexual Obsession" since a subscriber's Internet connection is often used by others, especially in a multiple-person household sharing a single connection. Nonetheless, Plaintiff contends the subpoenas are a necessary step to determine the identities of the Doe Defendants.

United States District Court
Northern District of California

**DISCUSSION**

Federal Rule of Civil Procedure 26(d)(1) prohibits discovery without a court order prior to a Rule 26(f) conference between the parties. Courts generally use a "good cause" standard to decide whether to permit such early discovery. Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice of the responding party." Id. at 276.

To determine whether there is "good cause" to permit expedited discovery to identify anonymous internet user doe defendants, courts consider whether:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

OpenMind Solutions, Inc. v. Does 1-39, 2011 WL 4715200 at *2 (N.D. Cal. Oct. 7, 2011) (citing Columbia Ins. Co. v. seescandy. com, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999).) The Court will consider each of these factors in turn.

**A. Identification of Defendants as Persons Who Can Be Sued**

Plaintiff has satisfied the first factor: whether Plaintiff has identified the Doe Defendants with sufficient specificity such that the Court can conclude that each Defendant is a real person or entity that would be subject to the Court's jurisdiction. First, Plaintiff represents that it has taken steps to ensure that the IP addresses accurately reflect addresses that were used to copy Plaintiff's copyrighted work. Second, Plaintiff also represents that it has used geolocation technology to trace the IP addresses of each Doe Defendant to California; in other words, Plaintiff has made a prima facie showing of personal jurisdiction over each Doe Defendant. See DigiProtect USA Corp. v. Does, 2011

WL 4444666 at *1 (S.D.N.Y. Sep. 26, 2011) (stating that "[p]ublicly available software provides basic, or at least presumptive, geographic information about IP addresses").

**B. Previous Steps Taken to Identify the Doe Defendants**

With respect to the second factor, Plaintiff has also identified the specific steps it has taken to identify the Doe Defendants and explained why it is unable to name and serve them at this time. Columbia Ins. Co., 185 F.R.D. at 579. As the Doe Defendants accessed Plaintiff's video via the Internet without any identifying information other than their unique IP addresses, Plaintiff are unable to further identify the Defendants without information from the ISPs.

**C. Withstanding a Motion to Dismiss**

The Court also concludes that Plaintiff has made a prima facie showing that its Complaint would withstand a motion to dismiss. To prevail on its copyright claim, Plaintiff must prove (1) that it owns a valid copyright, and (2) that each defendant copied a work covered by the copyright. Online Policy Group v. Diebold, Inc., 337 F.Supp.2d 1195, 1199 (N.D. Cal. Sep. 30, 2004). "To be liable for direct infringement, one must actively engage in and directly cause the copying." Id. (internal quotation marks and citation omitted). Plaintiff has submitted evidence that it is the exclusive owner, by assignment, of the full copyright to "Sexual Obsession."[1] And it has also alleged how and when each Doe Defendant intentionally copied its work, and has explained how it determined each identified IP address.

Plaintiff has also made a prima facie showing that its Complaint would withstand a motion to dismiss for lack of personal jurisdiction. The Complaint alleges that the ISP associated with each Doe

[1] The written copyright assignment recites that it is between the original copyright owner, Heartbreaker Films, and Plaintiff here, AF Holdings, LLC. (Dkt. No. 27.) While the assignment is signed by a representative of the assignors, it is not signed by a representative of the assignee, AF Holdings, LLC. Instead, it is signed by a representative of AF Films, LLC. (Id.) As the law requires only that the assignment be signed by the assignor and not the assignee, see 17 U.S.C. § 204; Effects Associates, Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990), this inconsistency does not prevent a prima facie showing of copyright ownership.

Defendant is located in California; thus, the allegations of the Complaint support an inference that all of the Doe Defendants reside in California. At this stage in the proceedings, this is a sufficient showing.

Another issue frequently addressed by courts in these types of cases is whether the Doe Defendants are properly joined. Federal Rule of Civil Procedure 20 permits joinder of defendants in a single action if a right to relief is asserted against them "arising out of the same transaction, occurrence, or series of transactions or occurrences" and a "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)(B). "[T]he impulse is toward entertaining the broadest possible scope of the action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966); see also League to Save Lake Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1997) (stating that the "primary purpose" of Rule 20 "is to promote trial convenience and to prevent multiple lawsuits").

Plaintiff asserts that because all of the Doe Defendants were part of the same swarm downloading and distributing the same "Sexual Obsession" file during a limited period of time (a two-week period in April 2011), the copyright claims arise from the same transaction and occurrence and raise common issues of law and fact. While several courts have concluded that joinder is inappropriate under similar circumstances, see, e.g., Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 5573960 (N.D. Cal. Nov. 16, 2011), the Court concludes that Plaintiff has at least made a prima facie showing that the Doe Defendants are properly joined. See OpenMind Solutions, Inc., 2011 WL 4715200 at *7 (concluding that Plaintiff made a preliminary showing that satisfied Rule 20 given the allegations that the doe defendants were present in the same BitTorrent swarm and shared pieces of the same seed file). As the case progresses, the Court may conclude that it is unmanageable,

United States District Court
Northern District of California

depending on the number of defendants served and appearing, or that, in fact, the claims do not arise from the same transaction and occurrence. At this time, however, the Court is not persuaded that Plaintiff could not withstand a motion to dismiss for improper joinder.

**D. Likelihood of Identifying the Doe Defendants Through Discovery**

The final factor concerns whether the discovery sought will uncover the identities of the Doe Defendants. See Gillespie v. Civiletti, 629 F.2d 637, 642-43 (9th Cir. 1980) (stating that early discovery to identify doe defendants should be allowed "unless it is clear that discovery would not uncover the identities"); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (holding that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities").

The Court denied Plaintiff's initial motion for early discovery because Plaintiff had not satisfied this element. Although Plaintiff baldly alleged that issuing subpoenas to the ISPs would uncover the identities of the Doe Defendants, this allegation was not true. As Plaintiff has since conceded, the information subpoenaed will merely reveal the name and contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal *who* actually downloaded the work and therefore who can be named as a defendant. The Internet connection could have been used by the subscriber, by another member of the household, by a visitor to the household, or by someone secretly using an unsecure connection. (Dkt. No. 14 at 5.)

In its renewed motion, Plaintiff attempts to fill this gap by arguing that the subpoena to the ISPs is the necessary next step in Plaintiff's investigation to determine the identity of the Doe Defendants. Before an ISP will release its subscriber's contact information to Plaintiff, the ISP will notify the subscriber of the subpoena. According to Plaintiff, at that point some of the subscribers will actually initiate contact with Plaintiff and resolve Plaintiff's claim. In other words, the subpoena

United States District Court
Northern District of California

will lead to the identity of some of the Doe Defendants without the ISP actually releasing its subscriber's contact information. After the contact information is released in connection with any remaining Doe Defendants, Plaintiff will continue its investigation by sending a letter to the subscribers notifying them of Plaintiff's allegations and offering to settle the claims.[2] If Plaintiff is unable to resolve the case at this step, it will follow up the letter with a telephone call. Plaintiff contends that the information elicited from the telephone calls will often supply Plaintiff with sufficient information to name the responsible individuals in the lawsuit.

In light of this proffer, the Court concludes that it is not clear that requested early discovery, namely the subpoenas to the ISPs, will not lead to the discovery of the identities of the Doe Defendants. The Court recognizes that before granting such discovery it must weigh any prejudice to the responding party. In these circumstances, where Plaintiff has a good faith belief that the Doe Defendants reside in California, has submitted declarations outlining the steps it has taken to ensure that the identified Doe Defendants in fact downloaded Plaintiff's copyrighted material, and has limited its case to a narrow period of time, the Court concludes that good cause has been shown.

**CONCLUSION**

For the reasons explained above, the Court finds that there is good cause to grant Plaintiff's motion for early discovery and issue the requested subpoenas to the relevant ISPs. As mentioned above, however, the declaration of Peter Hansmeier submitted in support of Plaintiff's renewed motion discusses a work that is not at issue in this lawsuit, namely "Amateur Allure—Natalia." (Dkt.

[2] Plaintiff declined to provide the Court with an example of the letter it intends to send to the identified subscribers on the grounds that the letters are settlement offers and therefore confidential and privileged. Plaintiff's failure to cite any law in support of its assertion is unsurprising as there is no privilege for settlement offers. Federal Rule of Evidence 408 merely prohibits the use in evidence of a settlement offer to prove liability or the validity or amount of a claim. Fed. R. Evid. 408(a). Indeed, the Rule itself states that such evidence may be admitted for other purposes. Fed. R. Evid. 408(b); see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 584 (N.D. Cal. 2008) ("Rule 408 does not warrant protecting settlement negotiations from discovery"). Nonetheless, the Court will not require the letter at this time.

No. 24-1 at ¶ 15.) Accordingly, upon submission of a proper declaration in support of the renewed motion in this case, the Court will issue an order permitting discovery.

**IT IS SO ORDERED.**

Dated: November 22, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California